## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD D. GARCIA, ERICA NICHOLS COOK, JENNIFER SPEER, on behalf of themselves and all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | No. |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| BEYOND MEAT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiffs Richard D. Garcia, Erica Nichols Cook, and Jennifer Speer ("Plaintiffs") bring this Class Action Complaint against Defendant Beyond Meat, Inc. ("Beyond Meat" or "Defendant"), individually and on behalf of all others similarly situated, and complain and allege upon personal knowledge as to their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by Plaintiffs' attorneys:

### NATURE OF THE ACTION

1.      This is a civil class action lawsuit brought by Plaintiffs on behalf of all consumers who purchased Defendant's Beyond Meat products for personal or household use, including but not limited to: Beyond Meat Sausage Plant-Based Dinner Links Hot Italian 14 oz, Beyond Meat Beyond Sausage Plant-Based Dinner Sausage Links Brat Original 14 oz, Beyond Meat Beyond Beef Plant-Based 16oz Patties, Beyond Meat Beyond Beef Plant-Based Ground Beef, Beyond Meat Beyond Breakfast Sausage Plant-Based Breakfast Patties Classic 7.4 oz, Beyond Meat Beyond Breakfast Sausage Plant-Based Breakfast Patties Spicy 7.4 oz, Beyond Meat Beyond Chicken Plant-Based Breaded Tenders Classic 8 oz, Beyond Meat Beyond Meatballs Italian Style

1

Plant-Based Meatballs 12 CT Classic 10 oz, Beyond Meat Beyond Breakfast Sausage Plant-Based Breakfast Links Classic 8.3 oz ("Beyond Meat Products" or the "Products").

2.      Amidst the growing consumer demand for meat substitutes, Defendant has, and continues to, design, manufacture, promote, market, advertise, package, label, distribute, and sell Beyond Meat Products.

3.      Beyond Meat Products' labels, and Defendant's related marketing claims, are false and misleading because Defendant: (1) miscalculates and overstates the Products' protein content, which is measured in grams per serving determined by nitrogen testing; (2) miscalculates and overstates the quality of the protein found in its products, which is represented as a percentage of daily value and calculated by the Protein Digestibility Amino Acid Corrected Score method ("PDCAAS"); and (3) misleads consumers into believing that the Products provide equivalent nutritional benefits to that found in traditional meat-based products.

4.      By advertising protein content on the Beyond Meat Products' front label, Defendant misleads consumers into believing that they stand to benefit from the Products' stated protein content.

5.      Defendant also makes numerous false and misleading claims and/or omissions on its website, in its promotional and marketing materials, and on the Products' nutritional labels.

6.      Defendant has engaged in unfair and/or deceptive business practices by intentionally misrepresenting the nature and quality of Beyond Meat Products on the Products' respective nutrition labels and by failing to follow federal regulations that set forth the appropriate testing methodologies for determining protein content. Defendant has been unjustly enriched as a result of these and related practices.

7.    Plaintiffs and members of the Proposed Class were injured by Defendants false, fraudulent, unfair, deceptive, and misleading practices. Accordingly, Plaintiffs seek compensatory damages and equitable remedies for themselves(s) and members of the Proposed Class.

**PARTIES**

8.    Plaintiff Richard D. Garcia is a resident of Denver, Colorado and citizen of the United States. Plaintiff purchased Beyond Meatballs, among other Beyond Meat products, in Denver, Colorado several times in 2022, and was deceived by Defendant's acts as set forth herein. Plaintiff relied upon the representations regarding the %DV of the Products. Plaintiff also purchased the Products because of the claim on the label that the Products contain the stated amount of protein on the front of the Products' labels. Although the Products were more expensive than other choices he viewed, Plaintiff chose to pay the premium price based upon Beyond Meat' representations. All of the representations made by Beyond Meat regarding the product purchased by Plaintiff were false because the Products do not contain the stated %DV of protein, the stated amount of protein, or the adjusted protein content based upon the quality of the protein contained within the Products. As a result, Plaintiff did not receive the benefit of bargain or suffered an out-of-pocket loss.

9.    Plaintiff Erica Nichols Cooks is a resident of Des Moines, Iowa and citizen of the United States. Plaintiff purchased Beyond Ground Beef and Beyond Sausage, among other Beyond Meat products, at Target, Hy-Vee, and Walgreens stores in Iowa several times in 2022, and was deceived by Defendant's acts as set forth herein. Plaintiff also purchased the Products because of the claim on the label that the Products contain the stated amount of protein on the front of the Products' labels. Although the Products were more expensive than other choices she viewed, Plaintiff chose to pay the premium price based upon Beyond Meat' representations. All of the representations made by Beyond Meat regarding the product purchased by Plaintiff were false

because the Products do not contain the stated %DV of protein, the stated amount of protein, or the adjusted protein content based upon the quality of the protein contained within the Products. As a result, Plaintiff did not receive the benefit of  bargain or suffered an out-of-pocket loss.

10.     Plaintiff Jennifer Speer is a resident of Pensacola, Florida and citizen of the United States. Plaintiff purchased Beyond Ground Beef, among other Beyond Meat products, at Winn-Dixie, Publix, Walmart, and Thrive Market stores in Florida several times in 2022 and was deceived by Defendant's acts as set forth herein. Plaintiff also purchased the Products because of the claim on the label that the Products contain the stated amount of protein on the front of the Products' labels. Although the Products were more expensive than other choices she viewed, Plaintiff chose to pay the premium price based upon Beyond Meat' representations. All of the representations made by Beyond Meat regarding the product purchased by Plaintiff were false because the Products do not contain the stated %DV of protein, the stated amount of protein, or the adjusted protein content based upon the quality of the protein contained within the Products. As a result, Plaintiff did not receive the benefit of  bargain or suffered an out-of-pocket loss.

11.     Defendant, BEYOND MEAT, INC. is a publicly traded Delaware Corporation with its headquarters in El Segundo, California, and is registered as a foreign corporation in the State of California.

## JURISDICTION AND VENUE

12.     This Court has personal jurisdiction over Defendant because Defendant purposefully availed itself of the Iowa consumer market and distributes Beyond Meat Products to nearly two dozen locations within this District and throughout Iowa, where the Product is purchased by consumers every day.

13.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act

("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.  Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2)) because Plaintiffs purchased the Products in this District, substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the products, occurred within this District, and the Defendant conducts business in this District.

## FACTS

**A.     Background**

15.     Defendant BEYOND MEAT, INC. is a plant-based meat substitutes company that was founded in 2009 and launched its initial product line in 2012.

16.     As of December 2021, Beyond Meat had products available at approximately 130,000 retail and foodservice outlets in over 90 countries worldwide.  In the United States, Beyond Meat Products are available for purchase at 32,000 retail stores and 47,000 restaurants. Beyond Meat Products are sold in all 50 states, and are available for purchase in major grocery stores, big box stores, and other retail locations throughout the United States.

17.     At all relevant times, Defendant has, and continues to, design, manufacture, promote, market, advertise, package, label, and distribute Beyond Meat Products in a consistent and uniform manner throughout the United States.

18.     Beyond Meat describes itself as a "leader in plant-based meat" and "Revolutionary Plant-Based Protein Leader."

19.     Beyond Meat exceeded $400 million in net revenue during 2020 and continues to gain market share in the $1.4 trillion global meat industry.

20.     Beyond Meat has enlisted the help of many celebrities to advertise its Products as an easy way to introduce protein into one's diet and describes the Products as the "future of protein" on its website and in its marketing materials.

21.     Beyond Meat also uses social media platforms to promote the Products and attract potential consumers, and Defendant launched its #FutureofProtein marketing campaign on Instagram, Twitter, and Facebook.

22.     In fact, Beyond Meat goes the extra mile to represent that the Products are the "future of protein" and claims that eating the Products allows consumers to get high-quality protein in their diet while simultaneously helping the environment.



23.     Beyond Meat explicitly represents that its Products have enough high-quality protein to help build muscle.

**B.     Defendant misrepresents the protein contents in its products.**

**1.     Protein is an essential part of a healthy diet and is necessary for normal bodily functions.**

24.     According to the FDA, "[p]rotein is a component of every cell in the human body and is necessary for proper growth and development, especially during childhood, adolescence, and pregnancy. [It] helps your body build and repair cells and body tissue, and is important for many body processes, such as blood clotting, fluid balance, immune response, vision, and production of hormones, antibodies, and enzymes."

25.     A high-protein diet provides additional benefits, including appetite control, weight and body composition management, muscle growth and maintenance, improved cardiometabolic health, better strength, improved immune function, and faster tissue recovery.

26.     In light of these benefits, many consumers seek out high-protein products in order to achieve a high-protein diet.

27.     Similarly, individuals with specific health concerns, including pregnant, breastfeeding, or conditions that inhibit protein absorption, require more protein than the daily recommended minimum.

28.     The average sedentary man needs 56 grams per day of protein and the average sedentary woman needs 46 grams of protein per the Dietary Reference Intake.

**2.     Accepted methodologies exist for calculating protein content and daily value percentage.**

29.     Pursuant to the Food, Drug, and Cosmetics Act ("FDCA") (as amended by the Nutrition Labeling and Education Act), the United States Food and Drug Administration ("FDA")

governs the nutritional labeling of food and requires manufacturers to provide information about the level of certain nutrients, including protein. See 21 C.F.R. §101.9(c)(7).

30.     The FDA requires manufacturers to publish a product's protein content on its nutritional label, which is "[a] statement of the number of grams of protein in a serving." *Id*.

31.     The "Nitrogen Content Method" is used to calculate a given food product's protein content. Under this methodology, protein content is calculated on the basis of the factor of 6.25 times the nitrogen content of the food as determined by the appropriate method of analysis as given in the 'Official Methods of Analysis of the AOAC International' . . . , except when the official procedure for a specific food requires another factor.

32.     However, the FDCA requires disclosure of protein quality, which is determined through a more rigorous testing methodology called the Protein Digestibility Amino Acid Corrected Score ("PDCAAS") to calculate the "corrected amount of protein per serving:" The 'corrected amount of protein (gram) per serving' . . . is equal to the actual amount of protein (gram) per serving multiplied by the amino acid score corrected for protein digestibility. . . .The protein digestibility corrected amino acid score shall be determined by methods given in . . . 'Protein Quality Evaluation, Report of the Joint FAO/WHO Expert Consultation on Protein Quality Evaluation,' Rome, 1990, except that when official AOAC procedures described in section (c)(7) of this paragraph require a specific food factor other than 6.25, that specific factor shall be used. 21 C.F.R. §101.9(c)(7)(ii).

33.     Beyond Meat is required to use the PDCAAS calculation for the Products rather than some other non-sophisticated method. The regulation requires that for any product making a protein claim (which is contained on the front panel of all of the Products), the product must contain a statement of protein content as a percentage of the Daily Reference Value calculated

using the "corrected amount of protein"—an amount that is not calculated by simply multiplying the amount of nitrogen by 6.25, but by taking into account the "protein quality value," or "protein digestibility-corrected amino acid score." *See* 21 C.F.R. § 101.9(c)(7)(ii).

34.     So, for a product like the Products, the protein content *may* be calculated using the nitrogen method, ***but it also must be stated as a percentage of the Daily Reference Value using the corrected amount of protein***. This alternative to the nitrogen method (PDCAAS) is only required in the statement of percentage; it is not required for statements of absolute protein. Moreover, the regulations implicitly acknowledge that the nitrogen method is not the most accurate way to describe protein content.

35.     Recently, the FDA reaffirmed these requirements.[1]

   **3.   The Products do not contain accurate protein amounts on the front or back of the label.**

36.     43.     Industry standard testing has revealed that despite the Products representing certain amounts of protein, the Products contained less than the represented amount.

37.     As manufacturers, suppliers, wholesalers, distributors, and/or retailers, Defendant tested, or should have tested, the Products prior to sale. As such, Defendant knows or should have known that the claims are false and misleading on the Products.

38.     Defendant's stated protein amount and protein DV% claims are false and misleading. As independent lab testing reveals, the quantity of Protein determined by nitrogen in all but four of the Products are less than what Defendant represented. Even worse, the DV% of Protein for all of the Products is a small fraction compared to the DV% represented by Defendant.

39.     For example, it has been reported that testing of Defendant's Products show that the Products do not contain the amount of stated protein amount and/or protein DV%. For example,

---

[1] https://www.fda.gov/food/food-labeling-nutrition/industry-resources-changes-nutrition-facts-label#LabelClaims

Defendant's Beyond Beef Plant-Based Ground 16oz Patties, which is labeled as "20G Per Serving" and "40% DV" for protein, actually contains 19G Per Serving by nitrogen testing, and 7% DV for protein. This represents an underfill of 5% for protein content and an underfill of 33% for %DV for protein.

40.    Additional results are captured in the below chart:

| Beyond Meat Product | Protein Claim (per serving) | DV % Claim | Actual Protein Amount (per serving) | Actual DV% | % Difference Protein | % Difference DV |
|---|---|---|---|---|---|---|
| Sausage Plant-Based Dinner Links Hot Italian 14 oz | 16G | 25% | 13G | 5% | -18.75% | -15% |
| Beyond Sausage Plant-Based Dinner Sausage Links Brat Original 14 oz | 16G | 25% | 13G | 5% | -18.75% | -20% |
| Beyond Beef Plant-Based 16oz Patties | 20G | 40% | 18G | 36% | -10% | -4% |
| Beyond Beef Plant-Based Ground Beef | 20G | 40% | 19G | 7% | -5% | -33% |
| Beyond Breakfast Sausage Plant-Based Breakfast Patties Classic 7.4 oz | 11G | 22% | 10G | 4% | -10.1% | -18% |
| Beyond Breakfast Sausage Plant-Based Breakfast Patties Spicy 7.4 oz | 11G | 22% | 10G | 4% | -10.1% | -18% |
| Beyond Chicken Plant-Based Breaded Tenders Classic 8 oz | 11G | 16% | 13G | 2% | +18% | -14% |
| Beyond Meatballs Italian Style Plant-Based Meatballs 12 CT Classic 10 oz | 19G | 38% | 20G | 7% | +5.2% | -31% |

| Beyond Meat Product | Protein Claim (per serving) | DV % Claim | Actual Protein Amount (per serving) | Actual DV% | % Difference Protein | % Difference DV |
|---|---|---|---|---|---|---|
| Beyond Breakfast Sausage Plant-Based Breakfast Links Classic 8.3 oz | 8G | 16% | 7G | 3% | -12.5% | -13% |

41.     By permanently marking the Products with their purported protein amount and/or protein DV% claims, Defendant knew that the claims are false and misleading, yet still advertised, labeled, and packaged the Products with the false and misleading claims.

42.     Simply put, Defendant's protein amount and/or protein DV% for the Products are a farce. Defendant knowingly prepared the material on their website and product labels to misrepresent the true protein amount and/or protein DV% for the Products.

43.     Plaintiffs and Class Members would not have purchased the Products or would have paid less for the Products if they were aware of the misleading labeling of the Products by Defendant.

44.     Defendants intended for Plaintiff and the Class members to be deceived or misled. Defendants' deceptive and misleading practices proximately caused harm to the Plaintiffs and the Class.

45.     Plaintiffs and Class members would not have purchased the Products, or would have not paid as much for the Products, had they known the truth about the mislabeled and falsely advertised Products

**4. Defendant mislabels the protein content of The Beyond Meat Products.**

46.     By way of example only, Beyond Meat advertises the Beyond Beef Plant-Based 16oz Patties as being "Plant-Based Patties" with "20G of Plant Protein Per Serving".



47.     The Products are made with "Pea Protein" as their basis for the "20G of Plant Protein Per Serving" claim.

48.     Beyond meat claims the 20G of Plant Protein Per Serving is 40% of the Daily Value for protein on the Nutrition Facts for the patties.



49.     Defendant does the same with the rest of its Products. Because it advertises a protein content claim on the front of its labels, it must use the PDCAAS method of testing on its Products but did not.

12

50.     Plaintiffs and members of the putative Class were harmed and they would not have

purchased or would have paid substantially less for the Products had they been advertised correctly

– which is to say that they would have been advertised as providing protein amounts in amounts

less than what was advertised (for the Products described above) and %DV protein amounts in

amounts less than what was represented; however, they were not advertised as such.

## CLASS ACTION ALLEGATIONS

51.     Plaintiffs bring this action individually and as representative of all those similarly

situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Class:

> All persons in the United States who purchased one or more of the following products for
> personal use and not for resale within the United States: Beyond Meat Sausage Plant-
> Based Dinner Links Hot Italian 14 oz, Beyond Meat Beyond Sausage Plant-Based Dinner
> Sausage Links Brat Original 14 oz, Beyond Meat Beyond Beef Plant-Based 16oz Patties,
> Beyond Meat Beyond Beef Plant-Based Ground Beef, Beyond Meat Beyond Breakfast
> Sausage Plant-Based Breakfast Patties Classic 7.4 oz, Beyond Meat Beyond Breakfast
> Sausage Plant-Based Breakfast Patties Spicy 7.4 oz, Beyond Meat Beyond Chicken
> Plant-Based Breaded Tenders Classic 8 oz, Beyond Meat Beyond Meatballs Italian Style
>
> Plant-Based Meatballs 12 CT Classic 10 oz, Beyond Meat Beyond Breakfast Sausage
> Plant-Based Breakfast Links Classic 8.3 oz

52.     Members of the Class described are referred to as "Class Members" or members of

the "Class."

53.     The following are excluded from the Class: (1) any Judge presiding over this action

and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors,

predecessors, and any entity in which Defendant or its parent has a controlling interest (as well as

current or former employees, officers, and directors); (3) persons who properly execute and file a

timely request for exclusion from the Class; (4) persons whose claims in this matter have been

finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's

counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

54.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

55.     Numerosity – Federal Rule of Civil Procedure 23(a)(1). The members of the Class are so numerous that individual joinder of all Class Members is impracticable. On information and belief, Class Members number in the thousands to millions. The precise number or identification of members of the Class are presently unknown to Plaintiffs but may be ascertained from Defendant's books and records or from information maintained by retailers. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

56.     Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3). Common questions of law and fact exist as to all members of the Class, which predominate over any questions affecting individual members of the Class. These common questions of law or fact include, but are not limited to, the following:

      a.      Whether the Products' contents are mislabeled pursuant to the FDCA;

      b.      Whether Defendant knowingly made misleading statements in connection with consumer transactions that reasonable consumers were likely to rely upon to their detriment;

      c.      Whether Defendant knew or should have known that the representations and advertisements regarding the Products was false and misleading;

      d.      Whether Defendant's conduct violates public policy;

      e.      Whether Defendant's acts and omissions violate state law;

f.      Whether Plaintiffs and the Class Members did not receive the benefit of their bargain when purchasing the Products;

h.      Whether the Plaintiffs and the Class Members suffered monetary damages, and, if so, what is the measure of those damages;

i.      Whether Plaintiffs and the Class Members are entitled to an injunction, damages, restitution, equitable relief, and other relief deemed appropriate, and, if so, the amount and nature of such relief.

57.      Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of herself and the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

58.      Typicality – Federal Rule of Civil Procedure 23(a)(3). Plaintiffs' claims are typical of the claims of the other Class Members, as each class member was subject to the same omission of material fact and misrepresentations regarding the Products' illegal ingredients and unlawful implied disease claims.  Plaintiffs share the aforementioned facts and legal claims or questions with Class Members, and Plaintiffs and all Class Members have been similarly affected by Defendant's common course of conduct alleged herein. Plaintiffs and all Class Members sustained monetary and economic injuries.

59.      Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4). Plaintiffs are adequate representatives of the Class because they are a member of the Class and their interests do not conflict with the interests of the Class Members they seek to represent. Plaintiffs have also retained counsel competent and experienced in complex commercial and class action litigation.

Plaintiffs and their counsel intend to prosecute this action vigorously for the benefit of all Class Members. Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

60.     Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and all Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

61.     Superiority – Federal Rule of Civil Procedure 23(b)(3).  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION

## Violation Of The State Consumer Fraud Acts

62.     Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint as if fully set forth herein.

63.     The Consumer Fraud Acts of the states prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

64.     Plaintiffs and the other Class Members have standing to pursue a cause of action for violation of the Consumer Fraud Acts of the states have suffered an injury in fact and lost money as a result of Defendant's actions set forth herein.

65.     Defendant engaged in unfair and/or deceptive conduct, including, but not limited to, making representations in violation of the FDCA.

66.     Defendant intended that Plaintiffs and each of the other Members of the Class would rely upon its unfair and deceptive conduct and a reasonable person would in fact be misled by this deceptive conduct described above.

67.     As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiffs and each of the other Members of the Class have sustained damages in an amount to be proven at trial.

68.     In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## SECOND CAUSE OF ACTION

### Violation Of Magnuson-Moss Warranty Act

### 15 U.S.C. § 2301, *et seq.*

69.     Plaintiffs repeat and re-allege all previous paragraphs, as if fully included herein.

70.     As previously alleged, this Court has original jurisdiction over this matter based upon the requirements of CAFA; therefore, the Court has alternate jurisdiction over Plaintiffs' Magnuson-Moss claim.

71.     The Products are consumer products as defined in 15 U.S.C. § 2301(1).

72.     Plaintiffs and Class Members are consumers as defined in 15 U.S.C. § 2301(3) and utilized the Products for personal and household use and not for resale or commercial purposes.

73.     Plaintiffs purchased the Products costing more than $5 and their individual claims are greater than $25 as required by 15 U.S.C. §§ 2302(e) and 2310(d)(3)(A).

74.     Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

75.     The federal Magnuson-Moss Warranty Act ("MMWA" or "Act"), 15 U.S.C. §§ 2301-2312, is a consumer protection regime designed to supplement state warranty law.

76.     The MMWA provides a cause of action for breach of warranty, including the violation of express and implied warranty of merchantability, or other violations of the Act. 15 U.S.C. § 2310(d)(1).

77.     The Defendant has the implied warranties of merchantability by failing to provide merchantable goods. The Products at issue are not merchantable or fit for their ordinary purposes because the Products do not contain the represented DV% amount for protein, thus a person seeking an amount of that protein, cannot consume Defendant's Products to consume the amount of stated protein.

78.     Therefore, Defendant's Products are not merchantable or fit for their ordinary purposes because the %DV in protein/and or amount of protein is underfilled within the Products because a consumer, and Plaintiffs, are not consuming the amount of stated protein and/or stated %DV of protein.

79.     Defendant violated the express warranty because despite claiming certain amounts of protein content and/or %DV of protein, those amounts are not found within the Products.

80.     In its capacity as warrantor, and by the conduct described herein, any attempt by Defendant to limit the warranties in a manner that it does is not permitted by law.

81.     By Defendant's conduct as described herein, Defendant has failed to comply with its obligations under its implied promises, warranties, and representations.

82.     Plaintiffs and the Consumer Fraud Multi-State Class fulfilled their obligations under the implied warranties and express warranties for the Products.

83.     As a result of Defendant's breach of warranties, Plaintiffs and the Consumer Fraud Multi-State Class are entitled to revoke their acceptance of the Products, obtain damages, punitive damages, equitable relief, and attorneys' fees and costs pursuant to 15 U.S.C. § 2301.

## THIRD CAUSE OF ACTION

### Breach of Express Warranty

84.     Plaintiffs bring this count on behalf of themselves and the Class, and repeat and re-allege all previous paragraphs, as if fully included herein.

85.     Defendant marketed, sold, and/or distributed the Products, and Plaintiffs and the Class Members purchased the Products.

86.     This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiffs and the members of the Class and Defendant.

87.     Defendant made specific warranties and representations by representing the amount of protein on the front of the Products' label and warranted a corresponding %DV for protein on the back of the Products' label. Plaintiffs' and Class Members relied on these representations and respective amounts made by Defendant at the time of purchase.

88.     For all of the Products, Defendant breached the %DV of protein stated on the back of the Products' label because the Products contain a considerably lower percentage of %DV of protein using industry standard testing.

19

89.     For the Products described specifically herein, Defendant breached the warranties for a number of the Products by standing an amount of protein on the front of the Products' label when the Products contain a protein amount less than the represented amount. Therefore, for those Products, Defendant also breached their warranty by underfilling those Products with less protein than represented.

90.     This breaches the warranties made by Defendant which Plaintiffs reasonably relied upon at the time of purchase.

91.     Plaintiffs and the members of the Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

92.     As a direct and proximate result of Defendant's breaches of its express warranties and their failure to conform to the Products' express representations, Plaintiffs and Class Members have been damaged. Plaintiffs and Class Members have suffered damages in that they did not receive the Products they specifically paid for and that Defendant warranted it to be. In addition, Plaintiffs and Class Members paid a premium for a product that did not conform to the Defendant's warranties.

93.     Defendant was on notice of the breaches of the express warranty of the Products as described herein.

## FOURTH CAUSE OF ACTION

### Breach of Implied Warranty

94.     Plaintiffs bring this count on behalf of themselves, the Class and repeats and re-alleges all previous paragraphs, as if fully included herein.

95.     Defendant sold each of the Products with a corresponding protein content amount and %DV for protein. The implied warranty for each of the Products was that they functioned as a product that contained the amount of represented protein content amount and %DV for protein.

96.     Defendant breached the implied warranty of merchantability for all of the Products because they do not contain the %DV for protein. Plaintiffs and Class purchased the Products for the represented protein %DV percentage. When the Products failed to contain the %DV percentage represented on the Products' labels, the Products failed to be of merchantable quality and fit for their ordinary use.

97.     As a direct and proximate result of Defendant's breaches of its implied warranties, Plaintiffs and Class Members have been damaged. Plaintiffs and Class Members have suffered damages in that they did not receive the product they specifically paid for. In addition, Plaintiffs and Class Members paid a premium for a product that was not merchantable for ordinary use.

98.     Defendant was on notice of the breaches of the implied warranty of the Products as described herein.

## FIFTH CAUSE OF ACTION

### Unjust Enrichment

99.     Plaintiffs bring this count on behalf of themselves, and the Class Members and repeat and re-allege all previous paragraphs, as if fully included herein.

100.    Plaintiffs conferred benefits on Defendant by purchasing the Products at a premium price.

101.    Defendant has knowledge of its receipt of such benefits.

102.    Defendant has been unjustly enriched in retaining the revenues derived from

103.    Plaintiffs and Class Members' purchases of the Products.

104.    Defendant's retaining these moneys under these circumstances is unjust and inequitable because Defendant falsely and misleadingly represented that Products contain a protein amount and/or protein DV% that is not true.

105.     Defendant's misrepresentations have injured Plaintiffs, Class Members, and Subclass Members because they would not have purchased (or paid a price premium) for the Products had they known the true facts regarding the Products' ingredients.

106.     Because it is unjust and inequitable for Defendant to retain such non-gratuitous benefits conferred on it by Plaintiffs, Class Members, and Subclass Members, Defendant must pay restitution to Plaintiffs, Class Members, and Subclass Members, as ordered by the Court.

## CONCLUSION

WHEREFORE, Plaintiffs, individually and on behalf of a class of all others similarly situated, seek a judgment against Defendant, as follows:

a.   For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as Class representatives and Plaintiffs' attorneys as Class Counsel;

b.   For an order declaring that Defendant's conduct violates the statutes referenced herein;

c.   For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

d.   For compensatory, statutory, and punitive damages, as applicable, in amounts to be determined by the Court and/or jury;

e.   For prejudgment interest on all amounts awarded;

f.   For an order of restitution and all other forms of equitable monetary relief;

g.   For injunctive relief as pleaded or as the Court may deem proper; and

h.   For an order awarding Plaintiffs and the Class and Subclass their reasonable attorneys' fees, expenses and costs incurred in bringing this lawsuit.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all claims so triable.

Dated: September 9, 2022

For Plaintiffs:

*/s/ J. Barton Goplerud*_____
J. Barton Goplerud, AT0002983
Brian O. Marty, AT0011622
SHINDLER, ANDERSON,
GOPLERUD & WEESE PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Telephone: (515) 223-4567
E-mail: goplerud@sagwlaw.com
          marty@sagwlaw.com

Elizabeth A. Fegan (to be admitted
pro hac vice)
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Phone: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com